IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-00459-BO

| | | |
|---|---|---|
| OVIS MATAMOROS CANALES, *on behalf of himself and others similarly situated,* | ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | O R D E R |
| OPW FUELING COMPONENTS LLC | ) ) ) | |
| Defendant. | ) | |

This matter comes before the Court on the memorandum and recommendation ("M&R") by United States Magistrate Judge Robert T. Numbers, II. [DE 52]. Defendant objects to part of the M&R. Plaintiff has filed responses to those objections. The matter is ripe for decision. For the reasons that follow, the Court adopts the M&R in its entirety; the Court consequently grants in part and denies in part defendant's partial motion to dismiss.

BACKGROUND

For over a decade, plaintiff Ovis Matamoros Canales worked at defendant OPW Fueling Components LLC's Smithfield, NC plant. As a machine operator and welder, Canales frequently interacted with the plant's machinery. Canales claims these machines frequently failed due to a combination of age and poor condition. And, rather than call in a repair technician to fix them, OPW relied on Canales and his fellow workers to troubleshoot and fix their own machines. Canales attributes this policy to OPW's desire to keep productivity high and its aversions to the productivity killing delays caused by technician repairs.

During OPW's administrative meetings, which were held weekly then monthly post-covid, Canales and other employees reported their faulty machines. Canales raised his concerns to his team leads, Moises Mena and Tomas, as well as his department supervisor, Armando Cholula. At some point, Canales also complained to Alejandra Cobian Lopez, a human resources specialist. Canales intended that his complaints would initiate an investigation. It is unclear if they had that effect.

In October 2021, Canales was ordered to assist his co-worker Narciso Solis in repairing Solis's machine. Because he knew the machines, Canales was often asked to help repair other employees' machines. Canales maintains that he suggested Solis contact a technician. But Solis brushed him aside saying that he knew how to fix the machine. He then directed Canales to go get ready to press a button at Solis's command. Canales complied. From where he was standing, Canales had an obstructed view of Solis, but he recalls Solis placing a beam on the machine in attempt to fix it. The beam that Solis placed on the machine activated it, causing Solis to fall off the machine and sustain serious injuries.

In the wake of Solis's accident, Canales met repeatedly with OPW representatives. At first, he met with Janie, a human resources assistant, and Franklyn Terranova, the Director of Safety and Operations. He met with Janie and Terranova again, and they discussed why Solis had placed a beam on the machine. Canales mentioned that Solis had tried to repair the machine because that was their practice at the plant. At his third meeting with Janie and Terranova, Canales claims that they told him that Solis's accident was on his hands because he violated safety policies by failing to stop Solis from repairing the machine. Because he worried about increased hostility and scrutiny, Canales did not mention the ongoing issues with OPW's machines in his meetings with Janie and Terranova. A week after this third meeting, Canales met with Janie, Rick Benson, the

director of HR, and Joshua Smith, the Global Environmental Health and Safety Manager. At this meeting he was fired ostensibly because he violated OPW's safety policies and failed to stop Solis from using the beam. Canales asserts that this reason was a mere pretext and his firing was retaliatory for his complaints about the safety violations.

After receiving a right-to-sue letter from the North Carolina Department of Labor, Canales filed this action. In his individual capacity, Canales asserts a claim that defendant violated the North Carolina Retaliatory Employment Discrimination Act ("REDA"), a common law wrongful discharge claim, and a claim for intentional infliction of emotional distress. His complaint also raised putative class claims but those claims are beyond the scope of this order. OPW moved to dismiss Canales's individuals claims. [DE 18]. This Court referred that motion and other pre-trial motions to Magistrate Judge Numbers.

Judge Numbers issued an M&R [DE 52] recommending that this Court grant OPW's motion to dismiss in part. Specifically, the M&R recommends that this Court deny OPW's motion to dismiss Canales's REDA and accompanying wrongful discharge claims. It also recommends that this Court grant OPW's motion to dismiss Canales's claim for intentional infliction of emotional distress and his wrongful discharge claim premised on violations from the North Carolina Constitution. OPW objects only to those portions of the M&R that recommend denying its motion. For his part, Canales responds only to OPW's objections.

DISCUSSION

As an initial matter, the Court addresses the portions of the M&R with no objections. Again, neither party objected to the recommendation that this Court dismiss Canales's claims for intentional infliction of emotional distress and wrongful discharge premised on violations of Article 1, § 1 of the North Carolina Constitution. "[I]n the absence of a timely filed objection, a

3

district court need not conduct *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation and citation omitted). The Court has reviewed the M&R and is satisfied that there is no clear error on the face of the record. As a result, the Court adopts the M&R and dismisses Canales's IIED claim. Likewise, his claim for wrongful discharge is dismissed to the extent that it relies on the North Carolina Constitution.

Turning to the contested issues, OPW has three specific objections that it contends warrant dismissal of the remaining claims: first, it argues that Canales's complaints are not legally protected activity under REDA; second, it argues that Canales failed to establish a causal connection between his complaints and his termination; and third, it argues that the wrongful discharge claim, which is predicated on the underlying REDA violation, fails with the underlying claim.

A district court is required to review *de novo* those portions of an M&R to which a party timely files specific objections or where there is plain error. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). When considering a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," as merely reciting the elements of a cause of action with the support of conclusory statements does not suffice. *Iqbal*, 556 U.S. at 678. The Court need not accept the plaintiff's legal

conclusions drawn from the facts, nor need it accept unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

**Canales's REDA claim.** Canales claims that his safety complaints precipitated his termination giving rise to his REDA claim. OPW responds that Canales's complaints are not legally protected activity and even if they were Canales failed to sufficiently establish a causal connection between his complaints and his termination.

The North Carolina Retaliatory Employment Discrimination Act prohibits employers from taking retaliatory action against an employee who files a complaint or takes other action with respect to the Occupation Safety and Health Act of North Carolina ("OSHANC"). *See* N.C. Gen. Stat. 95-241(a)(1)(b). "To state a REDA claim, a plaintiff must allege (1) that 'he exercised his rights' under one of the enumerated statutes; (2) 'that he suffered an adverse employment action;' and (3) that 'the alleged retaliatory action was taken because' he exercised his statutory rights." *Kelley v. Charlotte Radiology, P.A.*, 2019 NCBC LEXIS 15, at \*10 (N.C. Super. Ct. Feb. 27, 2019) (quoting *Wiley v. UPS, Inc.*, 164 N.C. App. 183, 186 (2004)).

All of Canales's complaints about ongoing OSHANC violations were raised internally. The Supreme Court of North Carolina has yet to rule on whether internal complaints are protected activity under REDA. *Hadley v. Duke Energy Progress, LLC*, 677 F.App'x. 859, 862 (4th Cir. 2017) (per curiam). As a result, this Court must follow the decisions of the North Carolina Court of Appeals unless there is persuasive data that the North Carolina Supreme Court would rule differently. *See United States v. Little*, 52 F.3d 495, 498 (4th Cir. 1995).

The Fourth Circuit has "deduced" that internal complaints about ongoing OSHANC violation can be protected activity. *Driskell v. Summit Contracting Grp., Inc.*, 828 F.App'x 858, 867 (4th Cir. 2020). When differentiating the protected from the unprotected, courts are to consider

whether the complaint relates to or leads to an investigation, whether it is made to someone other than the plaintiff's supervisors or managers, and whether workplace safety is a primary focus of the complaint. *Id.*

Viewing the allegations in the light most favorable to Canales, Canales's internal complaints about ongoing safety violations were a protected activity. Prior to Solis's accident, Canales brought his complaints about the state of the machines and OPW's internal repair practices to the attention of his team leads (Mena and Tomas), his department supervisor (Cholula), and a human resources specialist (Lopez). And after Solis's accident, Canales raised OPW's internal repair practice in his interview with two human resource officials (Terranova and Janie), an interview related to an investigation into Solis's injury. *See Driskell*, F.App'x at 867 (instructing courts to look for whether a complaint "relates or leads to an investigation."). Canales's activity is distinct from situations where plaintiffs have raised potential safety violations or criticisms instead of ongoing OSHANC violations. *See Pierce v. Atlantic Grp., Inc.*, 219 N.C. App. 19, 25–28 (2012) (concluding that plaintiff's suggestions to management on how to comply with new safety regulations was not protected activity); *see also Delon v. McLaurin Parking Co.*, 367 F.Supp.2d. 893, 902 (M.D.N.C. 2005) (dismissing REDA claim at summary judgment because a "complaint to a manager about a supervisor" did not amount to protected activity), *aff'd*, 146 F.App'x 655 (4th Cir.); *but see Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1 (2013) (finding protected activity when employees gave photograph of ongoing violation to supervisor), *discretionary review denied,* 367 N.C. 223.

In short, this Court concludes that Canales's has sufficiently alleged that he engaged in protected activity to survive OPW's motion to dismiss. Whether Canales's can support his allegations with evidence is a question left for summary judgment.

6

Similarly, OPW's second objection—that Canales failed to adequately allege a causal connection between his protected activity and his termination—also raises an issue suited for summary judgment not a motion to dismiss.

To survive a motion to dismiss, Canales does not have to prove that his termination was a result of his protected activity. Instead, Canales must only allege facts that plausibly state that his termination was the result of his protected activity. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 556 U.S. at 678.

"Temporal proximity between a protected activity and an adverse employment action 'is sufficient to make a prima facie case of causality under REDA.' " *Harris v. Blue Ridge Health Services, Inc.*, 388 F.Supp.3d 633, 641 (M.D.N.C. 2019) (quoting *Fatta v. M & M Props. Mgmt., Inc.*, 221 N.C. App. 369 (2012). Viewed in the light most favorable to Canales, the allegations in the amended complaint yield a reasonable inference that Canales engaged in protected activity in close temporal proximity to being fired. This is enough to state a claim. As a result, the Court denies defendant's motion to dismiss Canales's REDA claim.

**Canales's claim for wrongful discharge.** Canales's common law claim for wrongful discharge is premised on his REDA claim. In a similar vein, OPW's objections to the M&R's recommendations on Canales's wrongful discharge claim track its objections to his REDA claim. Because the two claims are tied together, OPW argues, dismissal of the REDA claim necessitates dismissal of the claim for wrongful discharge.

OPW is right that the two claims are tied together. Under North Carolina Law, a "valid claim for relief exists for wrongful discharge of an employee at will if the contract is terminated for an unlawful reason or a purpose that contravenes public policy." *Ridenhour v. IBM Corp.*, 132

7

N.C. App. 563, 567 (1999). REDA is recognized as a source public policy, allowing a plaintiff to pursue "both a statutory claim under REDA and a common law wrongful discharge based a violation of REDA." *White v. Cochran*, 216 N.C. App. 125, 133 (2011).

OPW is wrong to argue that the intertwinement of the two claims necessitates dismissal. As discussed above, Canales has adequately stated claim under REDA. Consequently, he has also adequately stated a claim for wrongful discharge. The Court thus adopts the recommendation and denies OPW's motion to dismiss. Canales may proceed with his wrongful discharge claim to the extent it is premised on REDA violations.

## CONCLUSION

For the reasons previously stated, the Court ADOPTS the M&R in its entirety. Defendant's partial motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claim for intentional infliction of emotional distress is DISMISSED. Plaintiff's claim for wrongful discharged is DISMISSED insofar as it relies on Article 1, § 1 of the North Carolina Constitution.

SO ORDERED, this 27 day of September 2023.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

8