IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00459-BO-RJ

OVIS MATAMOROS CANALES,
    Plaintiff,

v.                                      ORDER

OPW FUELING COMPONENTS LLC,
    Defendant.

This matter is before the Court on several motions, and today it addresses four—Defendant's motion for attorney's fees [DE 127], Plaintiff's motion to strike the motion for attorney's fees [DE 130], Plaintiff's motion for conditional class certification [DE 167], and a consent motion for a court-hosted settlement conference before Magistrate Judge Gates [DE 200]. A hearing was held on these matters before the undersigned on February 25, 2025, in Elizabeth City, North Carolina.

## BACKGROUND

Plaintiff Canales worked for Defendant OPW Fueling Components LLC at a location in Smithfield, North Carolina. On October 28, 2021, a workplace accident occurred which severely injured a fellow worker, Narciso Solis—subsequently, Canales was fired for his role in the accident.

Canales now brings a class action suit against OPW for alleged violations of the Fair Labor Standards Act, the North Carolina Wage and Hour Act, and for unlawful retaliation under the North Carolina Retaliatory Employment Discrimination Act. In addition to his unlawful retaliatory firing, Plaintiff Canales alleges that he and other similarly situated OPW employees were not

properly compensated for the overtime that they spent washing up and applying personal protective equipment (PPE) before and after their shifts and mandated lunch breaks [DE 1 at 9].

ANALYSIS

I. **Motion for Class Certification [DE 167]**

*A. The Plaintiff is not entitled to conditional class certification under the FLSA.*

On December 9, 2024, Plaintiff moved to conditionally certify a class of putative plaintiffs in this action for unpaid overtime under the Fair Labor Standards Act. 29 U.S.C. § 216(b). Defendant OPW responded in opposition, primarily arguing that the Plaintiff has failed to demonstrate that a class of similarly situated plaintiffs exists.

Conditional certification is appropriate when it would serve judicial efficiency, *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989), and the court must be mindful that granting conditional certification expands the scope of the litigation and begins a process of class-wide discovery, *see Blaney v. Charlotte–Mecklenburg Hosp. Auth.*, 2011 WL 4351631, at *10 (M.D.N.C. 2011) ("…the substantive question of whether each Plaintiff or putative class member may recover under the FLSA is an individualized, fact-intensive inquiry…"). The standard for conditional certification is not a "rubber stamp." *Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015).

The Fourth Circuit uses a two-stage procedure for certification of collective actions. *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 2017 WL 3841858, at *4 (M.D.N.C. 2017). At the first stage, relevant here, the court determines if the "plaintiff and potential opt-in plaintiffs [are] sufficiently similarly situated [as] to warrant issuing notice of the collective action." *Sheffield v. BB&T Corp.*, 2017 WL 1831091, at *1–2 (E.D.N.C. 2017). To meet that burden, the plaintiff's evidence "must tend to show that there exists a common policy, scheme, or plan that violates the

2

FLSA, but it need not enable the court to determine conclusively whether a class of similarly situated plaintiffs exists." *Williams v. G4S Secure Sols. (USA) Inc.*, 2018 WL 565718, at *2 (M.D.N.C. 2018) (citations omitted). At this stage, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." *Adams*, 93 F. Supp. 3d at 454.

While the standard of review is normally "fairly lenient," *Kirkpatrick*, 2017 WL 3841858, at *4, a heightened, intermediate standard applies when, as here, the court has "the benefit of evidence uncovered during discovery prior to the notice stage," *Blaney*, 2011 WL 4351631, at *6. "[N]either law nor logic supports rigidly applying the same standard of review at all points prior to discovery's close—particularly where, as here, discovery with respect to conditional certification has been completed." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 481–82 (S.D.N.Y. 2016).

Here, the Court's scheduling order [DE 111] bifurcated discovery, with the first, five-month phase explicitly permitting discovery of "the factual circumstances underlying a potential motion for [class] certification," for both the FLSA claims and Rule 23. As such, the Court will apply an intermediate standard of review. Under this intermediate standard, the plaintiff must show that there is a "reasonable basis for his claim that there are other similarly situated employees[.]" *Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 548 (E.D. Va. 2009). "Mere allegations will not suffice; some factual evidence is necessary." *Blaney*, 2011 WL 4351631, at *5. To be similarly situated, the Plaintiff must establish that he "and potential plaintiffs together were victims of a common policy or plan that violated the law." *Ceras–Campo v. WF P'ship*, 2011 WL 588417, at *2 (E.D.N.C. 2011).

3

In support of the contention that the plaintiff and a potential class of opt-in plaintiffs are similarly situated, Plaintiff has produced a copy of Defendant OPW's safety guidelines [DE 168-3 at 4], PPE guidelines [DE 168-4], and declarations from Plaintiff Canales and two other putative opt-in plaintiffs [DE 168-25, DE 168-26, DE 168-27]. These documents, Plaintiff purports, provide an adequate factual basis to conclude that a similarly situated class of plaintiffs exists. Defendant OPW, to the contrary, argues that the documents do not show that the purported plaintiffs were victims of a common plan, scheme, or policy under the FLSA. After consideration, the Court agrees with Defendant OPW.

The safety guidelines do not include a written policy about when PPE must be donned or doffed in relation to clocking in for work, or out for lunch [DE 168-3 at 4]. Likewise, OPW's PPE policy does not include guidelines for when PPE is to be donned or doffed in relation to clocking in or out, beyond simply stating that appropriate equipment is necessary, and that each employee shall be "thoroughly trained in regard to PPE usage." DE 168-4 at 6.

The declarations of Canales and the other purported plaintiffs likewise do not show the existence of a common policy or plan in regard to the donning and doffing of PPE. First, Plaintiff Canales states that he was employed as an "Assembly Worker, Machine Operator, and Welder," and that he "would not begin to put on [his] PPE until after [he] punched in at 5:25 AM." [DE 168-25 at 2, 4]. Further, Canales states that he often did not receive promised bonuses for working overtime, and that his superiors would not take action to resolve the issue if it was raised [*Id.* at 9]. Second, Opt-In Plaintiff Hernandez-Quevedo states that he was employed as an "Operator, Team Lead, and Technician," and that he would arrive at the plant and spend ten minutes donning PPE before punching in at 5:55 AM. [DE 168-26 at 2, 4]. Further, Hernandez states that he often had to follow up with his superiors to receive promised bonuses, but did eventually receive them [*Id.*

4

at 8]. Third, Opt-In Plaintiff Estrella Solis states that she worked as an "Assembler" and arrived at the plant ten minutes prior to the start of her shift and would "immediately clock in" before donning her PPE [DE 168-27 at 3–4]. Solis includes no statements about trouble receiving overtime bonuses.

This factual basis is inadequate to show that the purported plaintiffs were the victims of a common unlawful plan or policy.[1] Regarding PPE, the evidence shows that Canales and Solis would don their PPE after clocking in, while Hernandez would don it prior to clocking in. There was no formal policy in OPW's safety or PPE guidelines, rendering the donning and doffing of PPE largely a matter of personal preference. Regarding bonuses, while both Canales and Hernandez document issues with receiving their bonuses, Hernandez states that he was able to resolve the issue after talking to his superiors, while Canales states that he still has not been paid. Solis does not mention bonuses at all. To satisfy an intermediate standard of review, the Plaintiff must do more than simply allege that other potential class members with similar claims exist—the plaintiff is required to show the existence of those people. *Giron v. Square A Constr. Inc.*, 2021 WL 2481882, at *1 (W.D.N.C. 2021) ("plaintiffs must set forth more than vague allegations with meager factual support"). Plaintiff has not done so here, instead submitting declarations from two other employees who present unique and distinct factual contentions.

For these reasons, the Court determines that the named plaintiff Canales and the putative plaintiffs are not similarly situated for purposes of the FLSA. Accordingly, the motion for conditional certification is denied.

---

[1] This conclusion is reinforced by the Fourth Circuit's decision in *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 216 n.4 (4th Cir. 2009) ("…time [spent] during [ ] lunch breaks donning and doffing a few items, washing, and walking to and from the cafeteria [is] non-compensable, however, because it is part of a bona fide meal period, and, in the alternative, *de minimis*." (citations omitted)).

5

*B. The Plaintiff is not entitled to class certification under Rule 23.*

On December 9, 2024, the Plaintiff likewise moved under Federal Rule of Civil Procedure 23 for certification of a class including, generally, "[i]ndividuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in non-managerial positions, [and] were not compensated all promised, earned, and accrued wages due to Defendant OPW's policies..." [DE 168 at 25]. Defendant OPW responded in opposition, primarily contesting the commonality of Plaintiff's claims.

Fed. R. Civ. P. 23(a) provides that a class may be certified only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These requirements are often rendered as numerosity, commonality, typicality, and adequacy. Furthermore, in a suit brought under Rule 23(b)(3), the plaintiff must also show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The Court will focus its analysis on the issue of commonality. The "Plaintiff[ ] must establish that the common contention is one 'capable of classwide resolution' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671, 679 (4th Cir. 2024) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The Fourth Circuit recently addressed the question of commonality in *Stafford*, and emphasized the obligation of courts to "examine whether differences between class members impede the discovery of common

6

answers." *Stafford*, 123 F.4th at 680. This case is uniquely on point to the present matter and is, indeed, controlling.

In *Stafford*, the Fourth Circuit held that:

"Allegations of generalized policies are not usually sufficient for the purposes of class certification. Appellate courts are skeptical, for instance, when plaintiffs or district courts rely on nebulous references to 'systemic failures' or 'systemic deficiencies' to satisfy commonality. Such vagueness may mask a multitude of disparities. Plaintiffs may invoke overly general policies precisely because 'they are at a loss for a more specific thread to tie claims together.' Indeed, it is circular logic for plaintiffs to create a laundry list of factually diverse claims and then assert that these claims, in turn, prove the existence of a uniform company policy. We endeavor to ensure that commonality is not based on such 'semantic dexterity.'" *Id.* (citations omitted).

Here, Plaintiff proposes four questions that satisfy the requirement of commonality: "(1) whether Defendant failed to pay Named, Opt-Ins, and putative Rule 23 class members all of their owed, earned, and promised wages, including, any straight-time pay due to unpaid hours worked performing pre and post-shift activities including any activities during lunch breaks; (2) whether Defendant's system of compensating for *only* scheduled shift hours worked or engaging in time shaving violates the NCWHA; (3) whether work performed during lunch breaks is compensable; and (4) whether Defendant's failure to pay promised bonuses, holiday pay, and/or PTO also violates the NCWHA." DE 168 at 28–29.

However, these questions are of the exact same species that the Fourth Circuit found inadequate to demonstrate commonality in *Stafford*. The Circuit found so for a simple and straightforward reason—such common questions inevitably raise many more "distinct questions. What kind of off-the-clock work did an employee perform? How much time was spent on it? For whom was time-shaving attempted?" *Stafford*, 123 F.4th at 680. Invoking general policies without specific evidence of commonality does not meet the standard of Rule 23.

7

Identical logic compels an identical conclusion here. The evidence submitted by the Plaintiff includes workplace handbooks and declarations from three employees and former employees who, for reasons discussed *supra*, present distinct factual backgrounds. These individuals profess personal knowledge of unlawful practices common to the proposed class [DE 168-25 at 37, DE 168-26 at 9, DE 168-27 at 7]—however, the existence of such a policy is supported by nothing more than vague "allegations of generalized policies." *Stafford*, 123 F.4th at 680. One of Plaintiff Canales statements is illustrative—because his paystub did not reflect minute-to-minute clock in or clock out times, he states that he "[is] confident that OPW did not pay me for all of [my] time worked." DE 168-25 at 4. The open-ended statements of the three purported plaintiffs here fall short of the *Stafford* standard.

Plaintiff's proposed common questions about the failure to pay employees in accordance with the NCWHA are good for only one employee at a time. The problem becomes amplified when a complaint advances myriad theories of liability. Here, that includes time-shaving, failure to compensate workers for time spent donning and doffing PPE, failure to pay promised bonuses, and an unspoken policy requiring employees to service their own equipment in the absence of technicians. All of these claims are advanced by a named plaintiff whose employment was terminated following a workplace safety violation.

A finding of commonality is not permitted "on the sole basis that class members 'all suffered a violation of the same provision of law,' as this does not ensure that a common answer can address the entire class's claims." *Stafford*, 123 F.4th at 681 (quoting *Wal-Mart*, 564 U.S. at 350). As the Fourth Circuit requires, this Court demands "something more than conclusory assertions of some highly generalized company policy to have [employees] work without pay." *Id.* at 680. That bar has not been met.

8

Because the Plaintiff has not demonstrated commonality sufficient to satisfy the standard of Rule 23(a), it follows that the Plaintiff has not met the higher bar of Rule 23(b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). Here, any common questions that may exist within the proposed class do not predominate over questions affecting individual members. For the reasons discussed *supra*, resolving the claims levied by even a single plaintiff would require answering a cascade of questions, only a small part of which would be common between the class. The Court readily concludes that, absent more connective tissue tying the purported class together, a class action is not superior to other methods for bringing this litigation to a fair and lawful end.

Lacking commonality, the Court does not reach the additional Rule 23(a) requirements of numerosity, typicality, or adequacy. The motion for class certification under Fed. R. Civ. P. 23 is denied.[2]

## II. Motion for Attorney's Fees [DE 127 & DE 130]

On January 10, 2024, Magistrate Judge Numbers awarded Defendants attorneys' fees in an amount not to exceed $10,000 for Plaintiff's failure to investigate the facts supporting Canales's claims relating to a co-worker's injuries [DE 63]. Plaintiff untimely moved for reconsideration of that order [DE 74]. Though the motion was untimely, the Court reviewed Judge Numbers' order and found it neither contrary to law nor clearly erroneous in its conclusion [DE 108]. Accordingly, the Court denied the motion for reconsideration. Plaintiff noticed an appeal of that denial to the

---

[2] In denying the motion to certify the class under Fed. R. Civ. P. 23, the Court does not reach the question of what, if any, enforceability subsequently signed arbitration agreements between OPW and purported class members may have.

9

Case 5:22-cv-00459-BO-RJ    Document 208    Filed 03/25/25    Page 9 of 11

Fourth Circuit, DE 112, which was subsequently dismissed for lack of jurisdiction, DE 169. This Court received the mandate from the Fourth Circuit on January 13, 2025 [DE 175].

On July 12, 2024, Defendant moved for the awarding of attorneys' fees in the amount of $10,000 [DE 127]. Plaintiff opposed that motion, arguing that the Court lacked jurisdiction due to the pending appeal and that Defendant's motion was premature [DE 130]. No other grounds for disputing the award of fees were included with Plaintiff's response. The Court elected to hold the matter in abeyance until the mandate was returned, as it now has been [DE 138].

At this time, the Court again determines that Magistrate Judge Numbers' decision was not contrary to law nor clearly erroneous, for the reasons stated in its prior order [DE 108]. The Defendant has shown that $10,000 is a reasonable attorneys' fee through declarations and documentation [DE 128]. Defendant's motion for attorneys' fees [DE 127] is therefore granted, and Plaintiff's motion to strike [DE 130] is denied.

### III. Consent Motion for a Court-Hosted Settlement Conference [DE 200]

On March 2, 2025, the parties submitted a consent motion for a court-hosted settlement conference before Magistrate Judge Gates [DE 200]. The matter is hereby referred to Magistrate Judge Gates to conduct a settlement conference on a date amenable to the Court and the parties, subject to the Court's case scheduling order [DE 111]. If at any time a settlement is reached, it shall be reported immediately to the court, along with the parties' proposed resolutions for any unruled-on motions remaining on the court's docket.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to conditionally certify the class is DENIED [DE 167]. Defendant's motion for attorneys' fees [DE 127] is GRANTED, and Plaintiff's motion

10

Case 5:22-cv-00459-BO-RJ    Document 208    Filed 03/25/25    Page 10 of 11

to strike the motion for attorneys' fees [DE 130] is consequently DENIED. The Defendant is awarded $10,000 in fees.

The consent motion to refer the case to Magistrate Judge Gates for a court-hosted settlement conference [DE 200] is GRANTED.

SO ORDERED, this 25 day of March 2025.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE